[The STATE ex rel.] GLASSTETTER

v.

CONNELLY, Admr., et al.

[Cite as *State ex rel. Glasstetter v. Connelly,* 179 Ohio App.3d 196, 2008-Ohio-5755.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 08AP–56.

Decided Nov. 6, 2008.

Buckley King L.P.A., James E. Melle, and Chad J. Kaldor, for relator.

Nancy H. Rogers, Attorney General, and Jack W. Decker and Nichole S. Moss, Assistant Attorneys General, for respondents.

BRYANT, Judge.

{¶ 1} Relator, Eydie Glasstetter, commenced this original action requesting a writ of mandamus that orders respondents Rehabilitation Services Commission and its administrator, John M. Connelly, to reinstate her to the classified position of Human Resources Administrator 3 ("HRA 3") pursuant to R.C. 124.11(D)'s so-called "fallback" provision.

{¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate, who issued a decision, including findings of fact and conclusions of law. (Appendix A.) In his decision, the magistrate concluded that respondents' motion for summary judgment should be granted and relator's motion for summary judgment should be denied because R.C. 124.11(D) does not grant relator a clear legal right to reinstatement to her

classified position as HRA 3; nor does it impose upon respondents a clear legal duty to reinstate relator to that position.

{¶ 3} Explaining, the magistrate stated, "It is clear from the undisputed evidence before this court that relator was never appointed from a position in the classified service to a position in the unclassified service." Instead, "the HRA 3 position was simply redesignated from classified to unclassified by the appointing authority. Only one position was involved in the redesignation." Id. Because "the appointing authority did not appoint relator from a position in the classified service to a position in the unclassified service, R.C. 124.11(D) has no application here. Relator's circumstances fail to satisfy the statutory requirements under R.C. 124.11(D)." Id.

{¶ 4} Relator filed objections to the magistrate's decision, contending that "the magistrate erred as a matter of law":

(1) In denying a writ of mandamus ordering Relator's reinstatement after finding that Relator was not appointed to a position in the unclassified service as she thus remained a classified employee;

(2) In finding and concluding that Relator's position "was simply redesignated from classified to unclassified by the appointing authority" as there is no such statutorily authorized power in O.R.C. Chapter 124 and Respondent cannot create new appointing authority powers for itself;

(3) In failing to find that Relator's consent to become unclassified was coerced and thus Relator remained a classified employee who could not be removed from her position except in accordance with the requirements of R.C. 124.34;

(4) In applying two inapplicable procedural rules of the State Personnel Board of Review to interpret R.C. 124.11(D);

(5) In failing to find under the circumstances of this case that Relator['s] consent was coerced and thus ineffective to divest her of her classified status;

(6) In ruling that Exhibit "B," ADM 2002.15, was irrelevant to the outcome in this case;

(7) In ruling that John Connelly's statement to Relator, made at the time he ordered her to become unclassified, that she had fallback rights was irrelevant to the outcome in this case;

(8) In ruling that Relator's tenure could be divested without compliance with R.C. 124.34;

(9) In failing to find under the circumstances of this case that Relator's consent to become unclassified was coerced and thus ineffective to divest her of her classified status;

(10) Whether Relator was classified or unclassified at the time of her removal.

## I.  Procedural History

{¶ 5} As the magistrate's decision sets out more fully, relator was hired to fill the HRA 3 position with respondent Rehabilitation Services Commission in October 1998.  Although relator assumed the position as a classified employee, in 2006, the position was changed to an unclassified one.  Subsequent to the change, Connelly informed relator on August 18, 2006, that he was terminating her from that position.  Upon her termination, relator appealed to the State Personnel Board of Review, requesting that she be reinstated to her HRA 3 position.

{¶ 6} Relator further argued that her reinstatement should be to the classified service due to the fall-back rights she had under R.C. 124.11(D).  Because the State Personnel Board of Review lacks jurisdiction to review a denied request to exercise fall-back rights, the State Personnel Board of Review stayed relator's appeal to allow the parties to resolve the issue of fall-back rights through a mandamus action, "after which time this Board shall take any remaining action deemed necessary."

## II.  Facts

{¶ 7} According to the evidence relator submitted, Connelly told relator on or about April 3, 2006, that he wanted to unclassify her position.  Relator asserts that Connelly presented the circumstances to her as a choice:  she could either remain classified and respondent would hire another employee with the same classifications and duties as relator who would "be over" her, or she could agree to become unclassified.  Contending that she was acting under coercion and duress, she advised Connelly that she would "go unclassified because it was not a risk."  According to relator, Connelly responded, "that's right because you have fallback rights."

{¶ 8} Relator's affidavit states that the day after relator asked for something in writing from Connelly reflecting that Connelly directed her to "go unclassified," one of Connelly's assistants delivered a memorandum asking that relator prepare the necessary paperwork regarding her change to the unclassified service, "including [her] statement of [her] willingness to move to the unclassified service."  Relator did so, but concluded by stating, "I further understand that I may be entitled to 'fall-back' rights under Ohio Revised Code section 124.11(D)." Through her attorney, relator attempted to exercise her claimed fall-back rights, but Connelly advised that she had no rights under R.C. 124.11(D).  Following an investigation, relator's employment was terminated.

## III.  Objections

{¶ 9} Despite the breadth of relator's objections, the single issue before us is whether relator is entitled to exercise fall-back rights pursuant to R.C. 124.11(D).

R.C. 124.11(D) provides, "An appointing authority * * * may appoint a person who holds a certified position in the classified service within the appointing authority's agency to a position in the unclassified service within that agency." As pertinent here, it further provides, "A person appointed pursuant to this division to a position in the unclassified service shall retain the right to resume the position and status held by the person in the classified service immediately prior to the person's appointment to the position in the unclassified service, regardless of the number of positions the person held in the unclassified service."

{¶ 10} As the magistrate explained, relator fails to meet the requirements of R.C. 124.11(D) because she was never appointed to a position in the unclassified service. Rather, the position she held was redesignated an unclassified position. Indeed, respondents contend that the position, by its duties, was unclassified from the moment relator accepted it in 1998. We, however, need not resolve that issue; it is one properly determined before the State Personnel Board of Review. Instead, we determine only that for the reasons set forth in the magistrate's decision, relator has no fall-back rights under R.C. 124.11(D).

{¶ 11} Relator nonetheless contends that respondents are estopped from denying her fall-back rights because Connelly, in discussing the redesignation of her position to unclassified, told her she had such rights. Although acknowledging that estoppel generally does not apply against the state, relator contends that her case presents an exception to the general principle because respondent had the authority to give relator fall-back rights. Connelly's granting them, relator argues, is therefore consistent with law, and estoppel does not apply.

{¶ 12} "The Ohio Supreme Court has held consistently that the doctrine of promissory estoppel does not apply to the state, its agencies, or public officials in the exercise of its governmental functions." (Citations omitted.) *Treciak v. Ohio Dept. of Commerce* (C.A.6, 1997), No. 96–3303, 1997 WL 397215. Because Connelly was a public official when he redesignated relator's position, he was exercising a governmental function, and promissory estoppel does not apply.

{¶ 13} Moreover, contrary to relator's contentions, Connelly had no authority to give relator fall-back rights, as R.C. 124.11(D) does not provide them under the circumstances of this case. To apply estoppel would in effect force respondent to act contrary to the law set forth in R.C. 124.11(D). That result is at least part of the reason estoppel generally does not lie against the state. See, e.g., *Ohio State Bd. of Pharmacy v. Frantz* (1990), 51 Ohio St.3d 143, 146, 555 N.E.2d 630. Indeed, if, as relator argues, the statute authorized Connelly to grant fall-back rights, relator would not have to rely on estoppel to secure them.

{¶ 14} The remainder of relator's objections ask us to resolve issues properly left to the State Personnel Board of Review's determination; we thus decline to

rule on them. To the extent, however, that we addressed relator's objections, we overrule them.

{¶ 15} Following independent review pursuant to Civ.R. 53, we find that the magistrate has properly construed the evidence in relator's favor and, applying the salient law, has properly concluded that relator lacks fall-back rights under R.C. 124.11(D). Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, we grant respondents' motion for summary judgment and deny the requested writ of mandamus.

> Objections overruled to the extent
> addressed; motion for summary
> judgment granted; writ denied.

McGrath, P.J., and Klatt, J., concur.

## APPENDIX A

### IN MANDAMUS
### ON MOTIONS FOR SUMMARY JUDGMENT

{¶ 16} In this original action, relator, Eydie Glasstetter, requests a writ of mandamus ordering respondents Rehabilitation Services Commission ("RSC") and its administrator, John M. Connelly, to reinstate her to the position of Human Resources Administrator 3 ("HRA 3") pursuant to R.C. 124.11(D)'s so-called fallback provision.

*Findings of Fact:*

### HOW THIS MANDAMUS ACTION RELATES TO
### OTHER PENDING ACTIONS

{¶ 17} 1. By letter dated August 18, 2006, Connelly informed relator of his decision to terminate her from the HRA 3 position that she had held with RSC since October 1998.

{¶ 18} 2. Earlier, by letter dated June 21, 2006, relator, through her attorney, had informed Connelly that she was exercising her alleged R.C. 124.11(D) fallback rights to resume the HRA 3 position she had held. In the letter, relator claimed that Connelly had coerced her to abandon the classified service prior to her termination.

{¶ 19} 3. In August 2006, relator appealed to the State Personnel Board of Review ("SPBR") her removal from her HRA 3 position. Relator requested that the action of the appointing authority be disaffirmed and that she be reinstated to

her HRA 3 position. This appeal to SPBR is assigned case number 06–REM–08–0342.

{¶ 20} 4. On December 20, 2006, concerned that SPBR might find relator to have been removed from the classified service, RSC issued a precautionary "123.34 order."

{¶ 21} 5. Relator filed a second appeal to SPBR on December 27, 2006, based upon RSC's "124.34 order." Relator's second appeal to SPBR is assigned case number 06–REM–12–0521. As in the prior appeal, relator requested that the action of the appointing authority be disaffirmed and that she be reinstated to her HRA 3 position.

{¶ 22} 6. On June 18, 2007, an SPBR administrative law judge ("ALJ") stayed the proceedings in case number 06–REM–08–0342. The SPBR's June 18, 2007 order explains:

> Entwined within the circumstances of this particular appeal is [Relator's] argument that, regardless of [RSC's] stated opposition, her position was returned to the classified service as a matter of law by her expressed intent to exercise fall-back rights pursuant to R.C. 124.11(D). [Relator] asserts that she has a clear, legal right to exercise such rights. A valid exercise of fall-back rights by [Relator] could potentially impact the issue of waiver and estoppel. This Board held in *Asti v. Ohio Department of Youth Services*, SPBR Case No. 03–MIS–01–0001, and the Supreme Court affirmed in *State ex rel. Asti v. Ohio Dept. of Youth Servs.*, 107 Ohio St.3d 262, 2005-Ohio-6432 [838 N.E.2d 658], that it lacks jurisdiction to review an apparent denial of a request to exercise fallback rights. Similarly, this Board is not authorized by R.C. 124.03 or any other section of the Ohio Revised Code to make a determination as to the validity of [Relator's] assertion that her prerogative to exercise her fall-back rights was a clear, legal right.
>
> Accordingly, the instant appeal is hereby STAYED in order to allow the parties to pursue resolution of the fall-back rights question through a mandamus action, after which time this Board shall take any remaining action deemed necessary.

(Emphasis sic.)

{¶ 23} 7. On July 9, 2007, another ALJ issued a stay order in case number 06–REM–12–0521.

{¶ 24} 8. Earlier, on February 20, 2007, relator filed a federal civil action against RSC, Connelly, and Katherine A. Brown, who was the assistant administrator of RSC when relator was employed at RSC. That action was filed in the United States District Court for the Southern District of Ohio. That action remains pending.

{¶ 25} 9. On January 22, 2008, relator filed this original action seeking a writ of mandamus.

## PROCEDURAL CHRONOLOGY OF THIS ACTION

{¶ 26} 10. On February 6, 2008, in this action, respondents moved for summary judgment or, in the alternative, for dismissal of the action.

{¶ 27} 11. In support of summary judgment, respondents submitted affidavits that were filed in the federal civil action, including the exhibits to the affidavits.

{¶ 28} 12. On February 7, 2008, this magistrate issued notice of a nonoral hearing date for respondents' motion for summary judgment.

{¶ 29} 13. On March 10, 2008, relator filed her memorandum in opposition to respondents' motion for summary judgment. In her memorandum in opposition, relator extensively relied upon the affidavits and exhibits submitted by respondents in support of their motion for summary judgment.

{¶ 30} 14. On April 8, 2008, relator moved for summary judgment.

{¶ 31} 15. On April 16, 2008, this magistrate issued notice of a nonoral hearing date for relator's motion for summary judgment.

{¶ 32} 16. In support of summary judgment and in opposition to respondents' motion, relator submits the affidavit of David C. Miller executed March 25, 2008. Miller was an appointed RSC commissioner from September 1991 to October 2005. In his affidavit, Miller states that he was RSC chairman from April 1999 to March 2003.

{¶ 33} 17. On April 15, 2008, respondents filed their memorandum in opposition to relator's motion for summary judgment.

## RELATOR'S AFFIDAVIT

{¶ 34} 18. In the federal civil action, relator filed her affidavit, executed November 13, 2007. That affidavit, along with its 23 exhibits, has been submitted in this action in support of respondents' motion for summary judgment.

{¶ 35} 19. According to her affidavit, on May 13, 1998, RSC posted an HRA 3 job for bid. The job posting stated that the HRA 3 position was a classified position. Relator had been employed with the state of Ohio with other agencies since January 6, 1992.

{¶ 36} 20. According to her affidavit, relator applied for the HRA 3 job posted by RSC. Following an interview and notification that she had been selected for

the position, relator transferred her state employment to RSC effective October 11, 1998.

{¶ 37} 21. According to relator's affidavit:

Several years before 2006, the RSC Commissioners adopted a policy which provided that no position in RSC which was occupied by a classified employee could be changed to an unclassified position while the position was occupied. The policy permitted unclassifying the job only after the position became vacant.

{¶ 38} 22. According to relator's affidavit, on or about April 3, 2006, Connelly told relator that he wanted to "unclassify" her position. RSC Assistant Director Katherine A. Brown also concurred in the reclassification.

{¶ 39} 23. According to relator's affidavit, Connelly offered relator "a choice." Relator could either remain classified and RSC would hire another employee with the same classification and duties as relator, and this new employee "would be over" her; or relator could agree to become unclassified, and RSC would not hire a new employee. According to relator's affidavit, acting under coercion and duress, she told Connelly that she would "go unclassified because it was not a risk." Connelly responded, "That's right because you have fallback rights."

{¶ 40} 24. According to relator's affidavit, on or about April 24 or 25, 2006, relator told Brown that she would like something in writing from Connelly that he had directed her to "go unclassified." Relator also told Brown that she felt that she had no choice in the matter, even though Connelly could not legally have "two HRA3s for the same job."

{¶ 41} 25. According to relator's affidavit, on May 16, 2006, Connelly asked relator whether she had said that she needed something in writing from him. Relator told Connelly that she did and that what he proposed to her was wrong because he could not have two HRA 3s doing the same job. Relator also told Connelly that he had left her with no option.

{¶ 42} 26. According to relator's affidavit, the next day, one of Connelly's assistants delivered to relator the following memorandum dated May 17, 2006:

Per our conversation and your decision, please prepare and process to the Department of Administrative Services the necessary paperwork, including your statement of your willingness to move to the unclassified service, moving the position that you currently occupy as the Team Leader of Human Resources to the unclassified service.

Your expeditious cooperation in this matter is appreciated. Please have the necessary paperwork prepared and presented to me for my signature by close of business on Wednesday, May 24th, with an effective date for the action of Sunday, May 28th.

{¶ 43} 27. According to relator's affidavit, on May 22, 2006, she signed the following document which she provided to Connelly:

I hereby accept the redesignation of my position of Human Resource Administrator 3. I understand that the position, effective 5-29-06, has been designated as unclassified by the Rehabilitation Services Commission. I acknowledge that the position is in the unclassified civil service of the State of Ohio pursuant to Ohio Revised Code section 124.11(A)(9). I further understand that I may be entitled to "fall-back" rights under Ohio Revised Code section 124.11(D).

{¶ 44} 28. According to relator's affidavit, on June 19, 2006, Brown told relator that she was being investigated.

{¶ 45} 29. According to relator's affidavit, by letter dated June 21, 2006, her attorney advised Connelly as follows:

Please be advised that I represent Mrs. Eydie Glasstetter who, as you know, has been recently directed by you to complete the paperwork necessary to place her in the unclassified service with fallback rights pursuant to R.C. § 124.11(D). As you are also aware, this act was done involuntarily under direct orders from you and, I might add, unlawfully as you do not have the right to force any employee to abandon classified civil service status and move into the unclassified service. Nonetheless, please be advised that Eydie Glasstetter, pursuant to R.C. § 124.11(D) and the case of *State ex rel. Asti v. Ohio Department of Youth Services,* 107 Ohio St.3d 262, 2005-Ohio-6432 [838 N.E.2d 658], hereby exercises her fallback rights to resume the same classified position and status held immediately prior to her forced appointment to the unclassified service effective upon the faxing of this letter to your office.

{¶ 46} 30. According to relator's affidavit, by letter dated June 30, 2006, Connelly advised relator's attorney:

In response to Ms. Glasstetter's allegation of fall back rights to a classified position, please be advised that ORC 121.11(D) and the Asti decision that you have cited do not provide Ms. Glasstetter with fall back rights. Therefore, her request is denied.

{¶ 47} 31. During June and July 2006, pursuant to Connelly's request, an investigation was conducted by Elizabeth K. Murch, Chief, Bureau of Employee Relations. Murch issued a report in August 2006 finding that relator "acted inappropriately by not being truthful during this investigation and by engaging in retaliatory behavior against Ms. McNabb for complaining about Ms. Glasstetter to Assistant Executive Director Brown." The Murch report is presented as an exhibit to Connelly's affidavit, which will be addressed more fully below.

{¶ 48} 32. According to relator's affidavit, by letter dated August 15, 2006, Connelly advised relator:

Attached please find a copy of the investigative report by Ms. Elizabeth Murch. Based upon the information and findings of the report you are hereby notified that I am considering termination of your employment with the Ohio Rehabilitation Services Commission effective close of business Monday, August 21, 2006. However, prior to a final decision you do have the opportunity to submit to me for consideration any written statement and/or documentation of why you should not be terminated from your position. You may, of course, fax this information to me. In the event you submit sufficient justification on why you should not be terminated you will be immediately notified.

{¶ 49} 33. According to relator's affidavit, by letter dated August 15, 2006, Connelly advised relator that she was being placed on "administrative leave" effective immediately.

{¶ 50} 34. According to relator's affidavit, by letter dated August 15, 2006, relator's attorney advised Connelly:

In response to your August 15, 2006 letter, Mrs. Eydie Glasstetter denies that she has done anything wrong and denies that you have just cause for her removal. We cannot say more as Eydie remains on administrative leave per your order.

{¶ 51} 35. According to relator's affidavit, by letter dated August 18, 2006, Connelly advised relator:

This letter is to notify you of my final decision to terminate you from your position of Human Resources Administrator 3 effective close of business Monday, August 21, 2006. * * * As you were previously advised, the decision is based upon the information and findings of the investigative report submitted by Ms. Elizabeth Murch. You were provided the opportunity to submit any statement and/or documentation of why you should not be terminated. A letter was submitted on your behalf by Mr. James E. Melle and was received on August 15, 2006 and was considered in making the final decision.

## CONNELLY'S AFFIDAVIT

{¶ 52} 36. In the federal civil action, Connelly filed his affidavit executed December 12, 2007, along with exhibits. Connelly's affidavit has been submitted to this mandamus action in support of respondents' motion for summary judgment.

{¶ 53} 37. According to Connelly's affidavit, he is the executive director of RSC, a position he has held since May 20, 2001. As RSC executive director, he is that agency's appointing authority. He is also an attorney at law licensed to practice in Ohio. He formerly served as RSC's general counsel from 1982 to 1992.

{¶ 54} 38. According to Connelly's affidavit, RSC currently has approximately 1,300 employees and consists of three bureaus: (1) the Bureau of Disability Determination ("BDD"); (2) the Bureau of Vocational Rehabilitation ("BVR"); and (3) the Bureau of Services for the Visually Impaired ("BSVI").

{¶ 55} 39. According to Connelly's affidavit:

During her employment with RSC, Eydie Glasstetter's working title was RSC's Team Leader for Human Resources. Her formal classification was Human Resources Administrator 3 ("HRA 3"). Ms. Glasstetter was never appointed to any other position during her or my tenure at RSC. Rather, throughout her employment with RSC, Ms. Glasstetter remained in the same position. * * *

On or about May 17, 2006, I directed Ms. Glasstetter to complete the paperwork necessary to redesignate her position as "unclassified". This change in designation did not entail any "appointment" by me, or any change in the identity of the position occupied by Ms. Glasstetter. Rather, the same position she had always occupied was now described as "unclassified" rather than "classified".

* * * I do not recall advising Ms. Glasstetter that she had "fall-back" rights, either at the time her position's status was redesignated, or at any other time. I do not believe Ms. Glasstetter ever enjoyed "fall-back" rights under O.R.C. § 124.11(D) with respect to the position she occupied at RSC.

* * * Over the course of time, it became clear to me that RSC's personnel records designated as "classified" a number of fiduciary and/or policy-making positions that should have been treated as "unclassified" under O.R.C. § 124.11(A)(9). On or about April 1, 2002, after several rounds of discussion with RSC's Commissioners and Executive Staff, RSC's approach to filling policy-making positions in the future was memorialized in a document entitled ADM 2002.15, "Management Structure."

{¶ 56} 40. Attached to Connelly's affidavit as an exhibit is an RSC document captioned "ADM 2002.15 Management Structure." Dated April 1, 2002, the document is a memorandum from Connelly to the RSC staff. The document states:

Over the recent weeks there has been an ongoing dialogue among Commissioners and Executive Staff, as to how the Commission can insure that we continue to be efficient and effective. After much discussion between Commissioners, and myself, we have decided we will be increasing the positions in the agency that are unclassified. As vacancies occur in the Executive Staff, these positions will be examined individually to determine if they should be moved to unclassified service.

One of the reasons that the unclassified status was created was to recognize the importance of persons within fiduciary leadership positions and to allow agencies the greatest flexibility at those levels. This will allow the agency to identify qualifications for the positions to meet the unique decision making and fiduciary needs of the agency in these top executive positions.

Traditionally, at this agency it has been the Administrator now Executive Director plus the three Bureau Directors. Given the pace and degree that change occurs in the world today and the increasing complexities and volume of issues, more staff need to be involved in the policy setting for the agency.

{¶ 57} 41. According to Connelly's affidavit:

ADM 2002.15 neither stated, nor was it intended to state, that RSC would never redesignate the status of an occupied position. Nor did any other policy of RSC, adopted either by the Commissioners or myself, prohibit the agency from redesignating the status of an occupied position from "classified" to "unclassified", if the duties of the position placed it in the unclassified service pursuant to O.R.C. § 124.11(A)(9). Nor do I recall advising Glasstetter or other RSC managers that ADM 2002.15 or any other policy required RSC to continue to designate occupied positions as "classified" regardless of the actual duties of those positions.

### AFFIDAVIT OF DAVID C. MILLER

{¶ 58} 42. As noted earlier, in this mandamus action, relator submitted the affidavit of David C. Miller in support of her memorandum in opposition to respondents' motion for summary judgment as well as in support of her motion for summary judgment.

{¶ 59} 43. The Miller affidavit executed for this action on March 25, 2008 states:

Affiant was first appointed a Commissioner on the Ohio Rehabilitation Services Commission (RSC) by Governor Voinovich in September 1991 and was re-appointed at the end of his first term by Governor Voinovich to a second term which ended on October 2, 2005. Affiant served continuously during that time with no break in service.

* * * Affiant was chairperson of the RSC from April 1999 until March 2003.

* * * In his capacity as an RSC Commissioner and/or as chairperson, Affiant worked with and supervised Connelly.

* * * While Affiant was chairperson of the RSC, at least two Commissioners expressed a desire to make more positions in RSC unclassified. Eydie Glasstetter's position was not one of the positions that Affiant ever heard discussed. Affiant did not support the idea of changing any classified position

to unclassified. Neither did Connelly during any of the discussions the Affiant ever heard.

* * * In his capacity as an RSC Commissioner and as chairperson, Affiant heard Connelly discuss the possible movement of a classified employee into the unclassified service on more than a dozen occasions.

* * * In all of our discussions on this subject, Connelly always agreed there was "no reason" to move a classified employee into the unclassified service because he always said that classified employees would have fallback rights.

* * * Affiant has read the affidavit of Connelly and Exhibit "B," ADM 2002.15 Management Structure (Exhibit "B") described in ¶ 6.

* * * Affiant understands the policy expressed in Exhibit "B" to read that the only time a classified position would be changed to unclassified was when it was vacant.

* * * Affiant's reading of the policy expressed in Exhibit "B" is consistent with Connelly's discussions with Affiant and the RSC Commissioners. It is also consistent with the intent of the majority of the RSC Commissioners at the time the policy was written in 2002–that no classified employee would be changed to unclassified.

* * * The Connelly Affidavit in ¶ 5 states: "I do not believe Ms. Glasstetter ever enjoyed 'fallback' rights under O.R.C. § 124.11(D) with respect to the position she occupied at RSC."

* * * This statement is contrary to every statement that Connelly ever made to Affiant on the subject of fallback rights and in our discussions of moving an employee from the classified to the unclassified service.

* * * Connelly's statement in ¶ 6 of his Affidavit is correct in that the policy was to apply in the future when "filling policy-making positions." It was not the intent of the RSC Commissioners at the time the RSC policy was discussed that the Executive Director be permitted to change a classified employee into an unclassified employee.

* * * Affiant states that the opinion expressed by Connelly in ¶ 8 of his affidavit is inconsistent with the discussions between Connelly and the RSC Commissioners concerning the classified employees at RSC. A majority of the RSC Commissioners intended that the classified employees remain classified and only when the particular position became vacant that it would be evaluated for a possible change to the unclassified service.

*Conclusions of Law:*

{¶ 60} It is the magistrate's decision that this court grant respondents' motion for summary judgment. It is further the magistrate's decision that this court deny relator's motion for summary judgment.

{¶ 61} On June 21, 2006, the date of the letter from relator's attorney stating that relator hereby exercises her fallback rights under R.C. 124.11(D), that statutory provision read:

An appointing authority whose employees are paid directly by warrant of the auditor of state may appoint a person who holds a certified position in the classified service within the appointing authority's agency to a position in the unclassified service within that agency. *A person appointed pursuant to this division to a position in the unclassified service shall retain the right to resume the position and status held by the person in the classified service immediately prior to the person's appointment to the position in the unclassified service, regardless of the number of positions the person held in the unclassified service.* Reinstatement to a position in the classified service shall be to a position substantially equal to that position in the classified service held previously, as certified by the director of administrative services. If the position the person previously held in the classified service has been placed in the unclassified service or is otherwise unavailable, the person shall be appointed to a position in the classified service within the appointing authority's agency that the director of administrative services certifies is comparable in compensation to the position the person previously held in the classified service.

(Emphasis added.)

{¶ 62} Parenthetically, the magistrate notes that effective June 30, 2006, H.B. No. 530 amended R.C. 124.11(D) by adding the following language:

An employee's right to resume a position in the classified service may only be exercised when an appointing authority demotes the employee to a pay range lower than the employee's current pay range or revokes the employee's appointment to the unclassified service. An employee forfeits the right to resume a position in the classified service when the employee is removed from the position in the unclassified service due to incompetence, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, violation of this chapter or the rules of the director of administrative services, any other failure of good behavior, any other acts of misfeasance, malfeasance, or nonfeasance in office, or conviction of

a felony. An employee also forfeits the right to resume a position in the classified service upon transfer to a different agency.

(Emphasis omitted.)

{¶ 63} Apparently, as respondents here contend, the addition of the above-quoted language to R.C. 124.11(D) pursuant to H.B. No. 530 was the General Assembly's response to the decision of the Supreme Court of Ohio in *State ex rel. Asti v. Ohio Dept. of Youth Servs.*, 107 Ohio St.3d 262, 2005-Ohio-6432, 838 N.E.2d 658.

{¶ 64} In *Asti*, the court applied the pre-June 30, 2006 version of R.C. 124.11(D).

{¶ 65} In August 1990, the Ohio Department of Youth Services ("DYS") hired Tony Asti as an account clerk. In July 1998, DYS promoted Asti to a position classified as Fiscal Officer 4. Between August 1990 and July 1999, Asti held various DYS positions, which were all in the classified service.

{¶ 66} On July 13, 1999, the DYS director appointed Asti the fiscal management bureau chief of the DYS Division of Finance and Planning. This bureau chief position was unclassified. In a letter to Asti, the DYS director specified that the appointment was being made pursuant to R.C. Chapter 124 and that Asti would retain the right to resume his previous classified position or be placed in a comparable one.

{¶ 67} In April 2001, DYS promoted Asti to the unclassified position of Acting Deputy Director of the Division of Finance and Planning. In December 2001, DYS promoted Asti to the unclassified position of Deputy Director of the Division of Finance and Planning.

{¶ 68} On December 16, 2002, Asti attended a meeting that included a DYS director and a DYS attorney. At that time, Asti was informed that he could either be demoted to another unclassified position or be removed from employment with DYS. During this meeting, Asti asked whether he had any fallback rights, and he was told that he did not. Asti signed a form consenting to a demotion to the position of Correctional Institutional Deputy Superintendent 3 at Scioto Juvenile Correctional Facility in Delaware County, Ohio. Asti added the following handwritten statement to the form:

I am signing this statement with the understanding that I will be able to research the right to fall back to my previous position in the classified service regardless of the number of classified positions I held.

{¶ 69} On January 2, 2002, Asti appealed his demotion to the SPBR. On July 24, 2003, an ALJ for the SPBR issued a report and recommendation. The ALJ recommended that the SPBR dismiss the appeal for lack of subject matter

jurisdiction. On August 27, 2003, the SPBR adopted the ALJ's recommendation and dismissed Asti's appeal for lack of jurisdiction.

{¶ 70} On September 9, 2003, Asti's employment with DYS ended. Despite repeated demands, neither DYS nor its director provided Asti with his previous position in the classified service under the statutory fallback provision.

{¶ 71} In October 2003, Asti filed a complaint in this court against DYS and its director. Asti requested a writ of mandamus to compel DYS to (1) reinstate him to his fallback, classified position; (2) reinstate him to his unclassified deputy director position; (3) pay him back pay and lost benefits; (4) award costs and attorney fees; and (5) pay interest. DYS answered the complaint, and the parties moved for summary judgment.

{¶ 72} On December 16, 2004, this court denied the writ of mandamus and, thereafter, Asti appealed as of right to the Supreme Court of Ohio.

{¶ 73} On appeal as of right, the Supreme Court of Ohio reversed the judgment of this court and remanded the cause. *Asti* explains:

In interpreting R.C. 124.11(D), our paramount concern is legislative intent. See *State ex rel. United States Steel Corp. v. Zaleski,* 98 Ohio St.3d 395, 2003-Ohio-1630 * * * ¶ 12. To determine this intent, we read words and phrases in context according to the rules of grammar and common usage. R.C. 1.42; *State ex rel. Cincinnati Bell Tel. Co. v. Pub. Util. Comm.,* 105 Ohio St.3d 177, 2005-Ohio-1150 * * * ¶ 31.

Reading the applicable words of R.C. 124.11(D) in context, we conclude that Asti has an unqualified right to resume his previous position in the classified service. Asti was appointed to an unclassified position from a classified position pursuant to R.C. 124.11(D). " '[T]he word "shall" shall be construed as mandatory unless there appears a clear and unequivocal legislative intent that [it] receive a construction other than [its] ordinary usage.' " (Brackets sic.) *Ohio Civ. Rights Comm. v. Countrywide Home Loans, Inc.,* 99 Ohio St.3d 522, 2003-Ohio-4358 * * * ¶ 4, quoting *Dorrian v. Scioto Conservancy Dist.* (1971), 27 Ohio St.2d 102 * * * paragraph one of the syllabus. The "shall" in R.C. 124.11(D) clearly requires a mandatory construction.

In addition, "retain" means "to hold or continue to hold in possession or use," and "resume" means to "begin again." Webster's Third New International Dictionary (1986) 1938 and 1937.

Thus, a person appointed to the unclassified service under R.C. 124.11(D) holds the legal right to begin his previous classified position again. This right is not conditioned upon any additional triggering event, and its exercise is not restricted to any particular time or event. Consequently, R.C. 124.11(D) vests

an unqualified right in a person so appointed at any time after appointment to the unclassified position under this section.

\* \* \*

This interpretation is supported by Ohio Adm.Code 123:1–5–03(C), which specifies that "[u]nclassifed appointments made pursuant to division (D) of section 124.11 of the Revised Code may be rescinded by the appointing authority or upon the request of the employee." \* \* \*

Furthermore, as Asti notes, R.C. 124.11(D) is a remedial provision that protects state employees when they move from classified positions, from which they may be terminated only for just cause, to unclassified, terminable-at-will positions. It provides appointing agencies like DYS with a broader pool of experienced applicants for upper level, unclassified positions by offering civil-service protection to those classified employees appointed to unclassified positions. See R.C. 1.11 ("Remedial laws \* \* \* shall be liberally construed in order to promote their object"). These statutory purposes are furthered by according R.C. 124.11(D) its plain meaning.

\* \* \*

Therefore, based on the manifest language of R.C. 124.11(D) and Ohio Adm. Code 123:1–5–03(C), Asti established a clear legal right to reinstatement to his Fiscal Officer 4 classified position or a substantially equal position and a clear legal duty on the part of DYS and its director to so reinstate him.

{¶ 74} As previously noted, SPBR stayed the administrative proceedings to give relator an opportunity to file this mandamus action based upon her claim to fallback rights under R.C. 124.11(D).

{¶ 75} The Supreme Court of Ohio has set forth three requirements that must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondents are under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of law. *State ex rel. Berger v. McMonagle* (1983), 6 Ohio St.3d 28, 29, 6 OBR 50, 451 N.E.2d 225.

{¶ 76} Summary judgment is appropriate when the movant demonstrates that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, said party being entitled to have the evidence construed most strongly in his favor. *Turner v. Turner* (1993), 67 Ohio St.3d 337, 339–340, 617 N.E.2d 1123; *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46. The moving party bears the burden of proving that

no genuine issue of material fact exists. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798.

{¶ 77} To reiterate the emphasized language of R.C. 124.11(D) quoted above:

A person appointed pursuant to this division to a position in the unclassified service shall retain the right to resume the position and status held by the person in the classified service immediately prior to the person's appointment to the position in the unclassified service, regardless of the number of positions the person held in the unclassified service.

{¶ 78} Ohio Adm.Code 124–1–02(E) states: " 'Appointment' means placement of an employee in a position."

{¶ 79} Ohio Adm.Code 124–1–02(S) states: " 'Position' means a group of duties intended to be performed by an employee."

{¶ 80} The magistrate finds that R.C. 124.11(D) does not grant relator a clear legal right to reinstatement to her HRA 3 position, nor does it impose upon respondents a clear legal duty to reinstate relator to the HRA 3 position.

{¶ 81} It is clear from the undisputed evidence before this court that relator was never appointed from a position in the classified service to a position in the unclassified service. Rather, the HRA 3 position was simply redesignated from classified to unclassified by the appointing authority. Only one position was involved in the redesignation. Given that the appointing authority did not appoint relator from a position in the classified service to a position in the unclassified service, R.C. 124.11(D) has no application here. Relator's circumstances fail to satisfy the statutory requirements under R.C. 124.11(D).

{¶ 82} Some further observations are in order. In this action, there is indeed a dispute as to whether Connelly told relator that she had fallback rights. Relator alleges in her affidavit that Connelly advised her of a fallback right at the time he instructed her to prepare the paperwork redesignating the HRA 3 position to the unclassified service. Connelly states in his affidavit that he has no recollection of ever telling relator that she had a fallback right.

{¶ 83} However, the dispute about what Connelly may have told relator about fallback rights is not a dispute regarding a material fact. Any advisement that Connelly may have given relator regarding fallback rights is irrelevant to the determination by this court of whether R.C. 124.11(D) provides a fallback right to relator that compels her reinstatement to the HRA 3 position.

{¶ 84} In this action, relator alleges that RSC had a policy that a classified position would not be redesignated to unclassified unless the position became vacant. Relator alleges such policy in her affidavit. In his affidavit, Connelly

asserts that the policy to which relator is referring is set forth in an April 1, 2002 memorandum captioned "ADM 2002.15 Management Structure." Connelly asserts that ADM 2002.15 did not prohibit RSC from redesignating the status of an occupied position from classified to unclassified if the duties of the position placed it in the unclassified service pursuant to statute.

{¶ 85} In the Miller affidavit submitted by relator in support of her motion for summary judgment and in opposition to respondents' motion, Miller expresses an interpretation of ADM 2002.15 that differs from that of Connelly. Miller asserts that ADM 2002.15 does not permit RSC to redesignate an occupied position from classified to unclassified.

{¶ 86} The parties' dispute about the interpretation to be given to ADM 2002.15 or the intent of RSC in adopting such policy is, again, irrelevant to this court's determination of whether R.C. 124.11(D) provides relator a fallback right requiring reinstatement to her HRA 3 position.

{¶ 87} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's motion for summary judgment and grant respondents' motion for summary judgment.